UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

LISA BARD,

    Plaintiff,

v.                                                                                          Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,          Case No. 1:19-cv-733

    Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security finding that, due to medical improvement, Plaintiff was no longer disabled as of September 22, 2016, and thus not eligible for Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act after that time. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence and in accordance with law. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Secretary of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Secretary of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

On October 20, 2011, Administrative Law Judge (ALJ) W. Baldwin Ogden found Plaintiff disabled beginning September 6, 2008, through the date of the decision due to degenerative disc disease of the lumbar spine. (PageID.132–37.) For purposes of continuing disability review, ALJ Ogden's decision is referred to as the "comparison point decision." (PageID.45.) On September 22, 2016, a Social Security Administration Disability Hearing Officer determined that Plaintiff was no longer disabled. (PageID.178–80.) The determination was upheld following reconsideration. (PageID.231–60.) Plaintiff subsequently requested a hearing before an ALJ. On October 10, 2018, ALJ Michael S. Condon held a hearing, at which Plaintiff and Michelle Ross, an impartial vocational expert, testified. (PageID.63-117.) On January 16, 2019, ALJ Condon issued a written decision finding that Plaintiff's disability ended on September 22, 2016, and that Plaintiff had not become disabled again since that date. (PageID.43–56.) As of the date Plaintiff's benefits were terminated, she was 45 years old and had previously worked as a machine tender and a fast food trainer/manager. (PageID.69–73, 158.)

The Appeals Council denied Plaintiff's request for review on July 8, 2019. (PageID.27–31.) Therefore, the ALJ's ruling became the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff initiated this civil action for judicial review on September 6, 2019.

## ANALYSIS OF THE ALJ'S DECISION

The Social Security Act provides that disability benefits may be terminated if "the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling." 42 U.S.C. § 423(f). Termination of benefits must be supported by substantial evidence that (1) there has been medical improvement in the individual's impairment

or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (2) the individual is now able to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f)(1)(A)–(B); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Thus a claimant's benefits are subject to termination if there has been medical improvement, if the improvement is related to the ability to work, and if the claimant is currently able to engage in substantial gainful activity. 20 C.F.R. §§ 404.1594(a), 416.994(a); *see also Watts v. Comm'r of Soc. Sec.*, 179 F. App'x 290, 292 (6th Cir. 2006).

The social security regulations articulate an eight-step sequential process by which determinations of continuing disability are made. *See* 20 C.F.R. §§ 404.1594, 416.994. If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. The steps of this sequential process are as follow:

(1) Is the individual engaging in substantial gainful activity;

(2) Does the individual have an impairment of combination of impairments which meets or equals in severity an impairment identified in the Listing of Impairments;

(3) Has the individual experienced a medical improvement;

(4) Is the improvement related to the individual's ability to work (i.e., has there been an increase in the individual's residual functional capacity based on the impairment(s) present at the time of the most recent favorable medical determination);

(5) If the individual has either not experienced a medical improvement or any such improvement is unrelated to his ability to perform work, do any of the exceptions to the medical improvement standard apply;

(6) Does the individual suffer from a severe impairment or combination of impairments;

(7) Can the individual perform her past relevant work;

(8) Can the individual perform other work.

20 C.F.R. § 404.1594(f).

Moreover, when the Commissioner evaluates whether a claimant continues to qualify for benefits, the claimant is not entitled to a presumption of continuing disability. *See Cutlip*, 25 F.3d at 286. Rather, the decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition." *Id.* However, the Commissioner has the burden of proof that a claimant has experienced medical improvement which renders her capable of performing substantial gainful activity. *See, e.g.*, *Kennedy v. Astrue*, 247 F. App'x 761, 764–65 (6th Cir. 2007); *Couch v. Comm'r of Soc. Sec.*, 2012 WL 394878, at *10 (S.D. Ohio Feb. 7, 2012).

ALJ Condon determined that, as of the date of the comparison point decision, October 20, 2011, Plaintiff suffered from degenerative disc disease of the lumbar spine, which precluded her from working.[1] (PageID.45.) The ALJ determined that, as of September 22, 2016, Plaintiff had experienced "medical improvement" in her impairment. The ALJ noted that, as of October 20, 2011, Plaintiff had both sciatica and numbness and had been assessed with acute chronic back pain. Testing had confirmed a reduced range of motion of the spine with radiculopathy. (PageID.48.) He compared medical records pertaining to the impairment from before and after October 20, 2011, noting that an MRI of the lumbar spine from July 2010 showed broad-based disc bulging and mild degenerative facet joint arthropathy, while a March 2012 x-ray of the lumbar spine was unremarkable and a March 2017 CT scan showed no lesions of the lumbar spine. (PageID. 48, 50, 814, 817, 903.)

The ALJ determined that Plaintiff's improvement was related to her ability to work because it resulted in an increase in her residual functional capacity (RFC). (PageID.53.) The

---

[1] ALJ Ogden had also found that Plaintiff had the severe impairment of substance abuse but determined that it was not a contributing factor material to the determination of disability. (PageID.136.)

5

ALJ found that, since September 22, 2016, Plaintiff had the severe impairments of status post partial colectomy with chronic incisional hernia; degenerative disc disease of the lumbar spine; history of substance/marijuana abuse; neuropathy; history of carpal tunnel syndrome post bilateral carpal tunnel release surgery; obstructive sleep apnea, depressive disorder due to medical condition with major depressive disorder features; and obesity. (PageID.45.) The ALJ determined that Plaintiff retained the RFC to perform light work as defined in 29 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff:

> Can lift and/or carry twenty pounds occasionally and ten pounds frequently. She can stand and/or walk up to four hours in an eight-hour workday and sit for a total of about six hours in an eight-hour workday. She must change positions every thirty minutes. She can do only occasional writing. The claimant can never climb ladders, ropes, or scaffolds, and she must not kneel, or crawl. She can only occasionally stoop and crouch, and she can frequently balance. She must have no more than occasional exposure to vibration. She must not work with or pick up objects that are the size of a paper clip or smaller. The claimant is unable to rotate the head and neck greater than 45 to 55 degrees to the left side or greater than 70 to 80 degrees to the right side. The claimant can perform simple, routine work that involves making simple, work-related decisions and tolerating occasional workplace changes.

(PageID.48–49.)

Based on this RFC, the ALJ determined that Plaintiff was unable to perform her past relevant work. The ALJ questioned the vocational expert to determine whether there existed other work which Plaintiff could perform consistent with her RFC. The vocational expert testified that there existed approximately 336,000 jobs in the national economy which an individual with Plaintiff's RFC could perform. (PageID.55–56.) This represents a significant number of jobs. *See, e.g.*, *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("Six thousand jobs in the United States sits comfortably within what this court and others have deemed 'significant.'"). Accordingly, the ALJ concluded that Plaintiff was no longer disabled as defined by the Social Security Act.

**DISCUSSION**

Plaintiff raises three issues in her appeal: (1) whether the ALJ erred in finding that Plaintiff experienced medical improvement relating to her ability to work; (2) whether the ALJ erred in failing to properly evaluate Plaintiff's subjective complaints; and (3) whether the ALJ was properly appointed.

**I.     The ALJ's Finding of Medical Improvement**

The relevant regulations define "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1); *see also* 20 C.F.R. § 416.994(b)(1)(i). A finding that a claimant has experienced "a decrease in medical severity" must be "based on changes (improvements) in the symptoms, signs, or laboratory findings associated with your impairment(s)." 20 C.F.R. § 404.1594(b)(1); *see also* 20 C.F.R. § 416.994(b)(1)(i).

As noted above, comparing Plaintiff's medical records from before and after October 20, 2011, the ALJ found an improvement in the signs and symptoms of Plaintiff's degenerative disc disease of the lumbar spine. While the July 2010 MRI showed broad-based disc bulging and mild degenerative facet joint arthropathy (PageID.814), the March 2012 x-ray of the lumbar spine was unremarkable, and the March 2017 CT scan showed no lesions of the lumbar spine (Page ID.818, 903). In addition, during an August 2016 consultative examination, June D. Hillelson, D.O., noted unremarkable straight leg raising bilaterally in the seated position, no muscle spasm or gross abnormalities in the spine and normal lumbar spine range of motion. (PageID.675, 677.) Moreover, Plaintiff testified at the hearing that she manages her neck and back pain conservatively with over-the-counter pain medication. (PageID.48, 84.)

7

Plaintiff does not specifically attack the ALJ's finding that Plaintiff's impairment of degenerative disc disease of the lumbar spine had improved. In any event, the Court finds that the ALJ's finding is supported by substantial evidence.

## II.     Plaintiff's RFC/Ability to Work

Medical improvement is related to a claimant's ability to work only if it results in an increase in the claimant's RFC. 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv). A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* SSR 96-8P, 1996 WL 374184, at *1 (Social Security Administration July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). As noted, the ALJ found that, as of September 2016, Plaintiff retained the ability to perform light work subject to additional limitations.

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because it ignores numerous treatment records demonstrating that Plaintiff had ongoing issues with pain and loss of feeling in her hands. Plaintiff further argues that the ALJ failed to account for her knee pain on her ability to stand or walk for most of the workday, as required for light work. (ECF No. 13 at PageID.1481–82.)

In December 2012, Plaintiff underwent right carpel tunnel release surgery. (PageID.671.) On February 6, 2015, Mithilesha Mishra, M.D., a hand surgeon, diagnosed Plaintiff with carpel tunnel syndrome and neck pain. (PageID.619.) On April 9, 2015, Dr. Mishra performed a left carpal tunnel release surgery. (PageID.627–29.) On September 16, 2015, Plaintiff saw Dr. Mishra complaining of a left trigger thumb and arm pain. (PageID.644.) On December 23, 2015, Dr. Mishra performed a release of Plaintiff's left trigger thumb. (PageID.651–52.)

8

Although Plaintiff testified about an inability to use her hands (PageID.75), the ALJ cited medical evidence indicating that Plaintiff's use was not so limited. For example, a March 2017 EMG of the bilateral upper extremities was normal with no evidence of nerve compression or carpal tunnel syndrome. (PageID.921–22.) In the August 25, 2016, consultative examination, Dr. Hillelson reported that Tinel's and Phalen's signs were negative, motor strength testing was 5/5 in all muscle groups, and wrist range of motion was normal. (PageID.674, 678.) Treatment notes also indicated negative Tinel's and Phalen's signs, normal wrist range of motion, and grip strength of 40 pounds in both hands. (PageID.700, 1323, 1327.) The ALJ also cited Dr. Hillelson's opinion that Plaintiff should be able to perform non-sustained fine motor activities and incorporated her suggested limitation on writing into the RFC. (PageID.52.)

Regarding Plaintiff's knee pain, she was prescribed a brace for her left knee in March 2018. (PageID.1401.) In June 2018, Plaintiff's physician administered a joint aspiration and injection in her left knee. (PageID.1438.) During the August 2016 consultative examination, Plaintiff walked without an assistive device and could heel, toe and tandem walk without difficulty. (PageID.674.) In January 2018, Plaintiff had intact sensation, no joint line tenderness, no knee swelling and intact ligaments. (PageID.1335.) A June 2018 x-ray of the left knee revealed no fracture, dislocation or bony defect; normal joint spacing; normal alignment; no joint effusion; and no significant arthritis. (PageID.1449.) Plaintiff testified that her knee is "good" as long as she is wearing her brace. (PageID.87.) Finally, the Court notes that no medical examiner or consultant opined that Plaintiff's knee presented functional limitations.

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular

9

opinion or item of medical evidence. *See, e.g., Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). This is precisely what the ALJ in this matter did, and the ALJ's RFC assessment is supported by substantial evidence. Plaintiff's argument is essentially that this Court should re-weigh the evidence and reach a different conclusion, which it is not permitted to do. Accordingly, this argument is rejected.

### III.   Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in assessing her subjective complaints. The ALJ's analysis satisfied the requirements of SSR 16-3p, which guides an ALJ in evaluating a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability. As explained in *Palmer v. Commissioner of Social Security*, No. 1:17-cv-577, 2018 WL 4346819 (W.D. Mich. Aug. 9, 2018), *report and recommendation adopted*, 2018 WL 4334623 (W.D. Mich. Sept. 22, 2018):

> The longstanding two-part analysis for evaluating symptoms applies. 20 C.F.R. § 404.1529(a). "An ALJ must first determine 'whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.' If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Commissioner*, 2017 WL 4278378, at *4 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007)). Relevant factors to be considered in evaluating symptoms are listed in 20 C.F.R. § 404.1529(c)(3). "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Commissioner*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Feb. 23, 2017).

Id. at *6.

Consistent with prior ruling SSR 96-7p, *see Rogers*, 486 F.3d at 248, SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10. Moreover, the same rules of review apply to an ALJ's assessment of a claimant's symptoms under SSR 16-3p that applied to a credibility assessment under SSR 96-7p. That is, the ALJ's determination must be afforded deference so long as it is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* The Sixth Circuit has said that an ALJ's "credibility findings may not be disturbed absent compelling reason," and in general, "are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation marks omitted).

Here, the ALJ did not limit his analysis of Plaintiff's subjective complaints to whether they were consistent with Plaintiff's daily activities or Plaintiff's non-compliance with treatment, although these are appropriate considerations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see O'Bryan v. Colvin*, No. 5:13-CV-188, 2014 WL 2167600, at *5 (W.D. Ky. May 23, 2014). The ALJ wrote:

> The claimant's allegations that she is unable to sustain work activity are inconsistent with her self-reported daily activities and medical history. The claimant notes independence with her own personal care, preparing simple meals, completing light chores with breaks, using public transportation, caring for her two dogs, shopping in stores, and managing her finances (Ex. 4E). The claimant testified to no improvements after surgery for bilateral carpal tunnel syndrome, but post-surgical examinations showed negative Tinel's and Phalen's signs, no effusions, no gross bony deformities, and a normal range of motion of the wrists

11

> (Ex. B9F/6). An EMG study was negative (Ex. B16F/175, 205). The claimant underwent a partial colectomy and has incisional hernias, but she testified that she wears a binder for those hernias, which prevents any bulging, and she testified that she does not experience pain while wearing the binder. There is also evidence of non-compliance with treatment. Records from late 2016 note that the claimant was rarely wearing prescribed wrist braces for carpal tunnel syndrome (Ex. B9F/45). Moreover, the claimant never exercises, despite recommendations that she lose weight and increase her physical activity (Ex. B3F/66, B6F/7). Overall, the totality of the evidence does not support a finding of disabling impairments, as of September 2016.

(PageID.51.)

In short, the ALJ's analysis of Plaintiff's subjective symptoms is supported by substantial evidence and should not be disturbed. Accordingly, this argument is rejected.

**IV.    Appointment of the ALJ**

Plaintiff argues that she is entitled to a new hearing because the ALJ was not properly appointed. In *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018), the Court held that Administrative Law Judges of the Securities and Exchange Commission (SEC) had to be appointed to their office in the manner proscribed by the Appointments Clause of the United States Constitution. *Id.* at 2049-55. Pursuant to the Appointments Clause, the ALJs in question were required to be appointed by the President, Courts of Law, or Heads of Departments. *Id.* at 2049-55. Absent such appointment, the ALJs employed by the SEC lacked the authority to perform their assigned tasks. *Id.* at 2049-55. Plaintiff's claim fails.

ALJ Condon was appointed in the manner proscribed by *Lucia*. On July 16, 2018, and in response to *Lucia*, the Commissioner ratified the appointments of the Social Security ALJs and approved those appointments as her own. Titles II and XVI: Effect of the Decision in *Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council*, SSR 19-1p, 2019 WL 1324866 at *2 (S.S.A., Mar. 15, 2019). The ALJ denied Plaintiff's claim six months later, on January 16, 2019. Accordingly, this argument is rejected.

## CONCLUSION

For the forgoing reasons, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A separate order consistent with this opinion will enter.

Dated: September 21, 2020 /s/ Sally J. Berens  
SALLY J. BERENS  
U.S. Magistrate Judge